# Strang's Estate.

*Gift—Parent and child—Fraud—Burden of proof.*

Where a mother gives to her epileptic son, with whom she lived and who had supported her, a check, one-half of which was to be his own property, and the other half was to pay the mother's debts and funeral expenses, and any balance to be divided among the mother's heirs, and the amount of the check is transferred to the

son's account in the mother's lifetime, the gift will be held a valid one, in the absence of fraud or undue influence on the part of the son or incompetence on the part of the mother. The burden is on the contestants of the gift to show fraud or incompetence.

In such a case the fact that the son included in the inventory of his mother's estate, which he filed as executor, the whole amount of the check, will not preclude him from claiming half of it, if it appears that he acted under a mistake of fact..

Gifts are prima facie good and it requires something more than a mere relation of parent and child to nullify them, or to impose on the donee, the burden of showing that they are free from any taint of fraud or undue influence.

Argued May 7, 1917. Appeal, No. 136, April T., 1917, by Thomas G. Strang, Executor of Ann Honeyman Strang, from decree of O. C. Allegheny Co., Sept. T., 1916, No. 50, dismissing exceptions to adjudication in Estate of Ann Honeyman Strang. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Exceptions to adjudication.

From the record it appeared that on November 2, 1908, James Strang and Ann Strang, his wife, loaned to one Benjamin Hallam the sum of twelve hundred dollars for three years with interest at six per cent. per annum, taking as security therefor a bond and mortgage, from said Hallam to James Strang and Ann Strang (his wife) in that amount. James Strang died on January 18, 1912, at which time two hundred dollars of said loan had been repaid. His wife survived him, dying on April 12, 1915. Both left wills appointing their son, Thomas G. Strang, executor. Thomas, who was an epileptic, lived with his father and mother and supported them. After the death of James Strang, the Hallam mortgage was paid off, and Mrs. Strang gave to her son a check for $1,015.65 which was the balance received on account of the mortgage. The understanding between them was that one-half the amount of the check was to be the son's own property, and the other half was

to be used to pay the debts and funeral expenses of the mother, and if anything remained it was to be divided among the heirs. Mr. and Mrs. Strang had four sons other than Thomas, all of whom had separate homes of their own. The testimony relating to the gift is summarized in the opinion of the Superior Court. The son, Thomas D. Strang, was surcharged as executor of his mother with the full amount of the money received on account of the mortgage.

*Error assigned* was decree dismissing exceptions to adjudication.

*Wm. C. Boyd,* for appellant.

*Thos. F. Garrahan,* with him *J. A. Langfitt* and *H. W. McIntosh,* for appellees.

OPINION BY KEPHART, J., July 13, 1917:

This is an appeal from an adjudication in the estate of Ann Strang. It is not necessary to comment on the several complications that arose in the settlement of this estate and the estate of the husband, James Strang. The question presented by the argument narrows down to one of gift. It was shown by the accountant that prior to the death of his mother, Ann Strang, she had given him a check for $1,015.65. One-half was to be his own property and the other half was to be used to pay the debts and funeral expenses, and if any remained it was to be divided among the heirs. The reason for the gift was that this son was an epileptic, and both father and mother were solicitous for his future. There was no evidence that either of these persons was incompetent to make a gift, nor of any acts which raised a suspicion of fraud or undue influence. The capacity of the donor will be presumed, and the fairness of the transaction is shown by the fact that the father, mother and this son lived together, and the son contributed to the support of the

parents. In the absence of evidence tending to show incompetence, incapacity, fraud or undue influence, the burden rests on the contestants of the gift. Gifts are prima facie good and it requires something more than a mere relation of parent and child to nullify them, or to impose on the donee the burden of showing that they are free from any taint of fraud or undue influence: Worrall's App., 110 Pa. 349. It is natural for parents to assist their children, and if they do so by making gifts to them which are, under the circumstances, reasonable, no presumption of incapacity arises. In these cases the natural solicitude of the donor for a son suffering from this affliction is corroborative of the positive testimony that a gift was made: Yeakel v. McAtee, 156 Pa. 600-611. The fund in dispute arose from a loan, payable to father and mother jointly, the father believing he owned the money bequeathed one-half of it to accountant but died before the money had been paid. It was then the property of the testatrix by right of survivorship; but there is nothing to preclude the mother from regarding it as being partly the accountant's property under the father's will, and there is nothing to prevent the children from considering it as being the father's money, half of which had been given to the accountant. The evidence concerning these matters was corroborative of the testimony showing that the check was in the nature of a gift. It was shown by statements from the bank's books that the money was before her death actually taken from the mother's account and deposited to the personal credit of this accountant. This certainly stamped the affair as a completed transaction, and without other evidence, would show a valid gift. To show that the transaction was not a gift but that the money was given to the accountant for the purpose of holding until after her death, and then to be distributed among the heirs, the testimony of Robert Strang, one of the brothers, was relied on; but in its most favorable aspect this testimony does not materially contradict appellant's testimony. Robert does not under-

take to say that he was to get any part of this money, nor attempt to explain any division that might be made among the heirs. The testimony of Mr. Stevenson, attorney for the parents for a number of years, details the conversations in relation to the check. It corroborates the appellant's testimony. He was a competent witness. While the inventory was prima facie evidence, we do not consider it binding. It does not preclude this appellant from asserting this claim, and in view of all of the evidence submitted, it is clear that there was a mistake in preparing the inventory.

We are satisfied that the court was in error in directing the account and to distribute the full amount received on the Hallam bond and mortgage. He should have been required to account for one-half of that amount. The item of interest, $33.44, was an error, and would have been corrected had attention been called to it. It can now be done. The commission of five per cent. on the entire sum should be restated.

The decree is reversed and it is directed that the account be restated and distribution made in accordance with this opinion.